UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STEVEN G. LEGUM, | : | CIVIL ACTION NO. |
|     Plaintiff, | : | 3:13-CV-01864 (VLB) |
| | : | |
| v. | : | |
| | : | |
| DAVID LLOYDS, MORTGAGE ELECTRONIC | : | |
| REGISTRATION SYSTEMS, INC., and | : | |
| WEBSTER BANK, N.A., | : | |
|     Defendants. | : | September 23, 2015 |

**MEMORANDUM OF DECISION GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [Dkt. 18, Dkt. 42] AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [Dkt. 44]**

**I.  Introduction**

The Plaintiff, a New York resident appearing *pro se*, brought this diversity action in a four-count Complaint filed December 11, 2013 seeking a declaratory judgment against David Lloyds, a Connecticut resident, Mortgage Electronic Registration Systems, Inc. ("MERS"), a Delaware corporation, and Webster Bank, N.A. ("Webster Bank"), a Connecticut bank.  Plaintiff seeks a declaration that Defendants' mortgages are subject and subordinate to a mortgage and a judgment lien held by Plaintiff.  Plaintiff claims that, although he obtained a mortgage after the registration of a valid *lis pendens*, subordination of his lien denied him due process because it was legally impossible for him to intervene in the underlying dissolution action in which the *iis pendens* was filed.  The Defendants seek summary judgment in their favor on all counts, for the reason

1

that the Plaintiff's purported liens against the subject property were extinguished pursuant to Connecticut General Statutes Sections 46b-80(a) and 52-325(a) by virtue of a conveyance ordered in a judgment of marital dissolution entered by the Superior Court before plaintiff acquired his purported interest in the property.

Currently pending before the Court are the parties' cross Motions for Summary Judgment. For the reasons that follow, the Defendants' Motions for Summary Judgment are GRANTED and Plaintiff's Motion for Summary Judgment is DENIED.

II.     Factual Background

The parties agree that there are no genuine issues as to any material facts in this case, and thus, the following facts relevant to the action are assumed to be true. The subject of the action is a parcel of property located at 1 Stallion Trail, Greenwich, Connecticut (the "Property"). Peter D. McKenna ("McKenna") and his wife, Roberta Delente a/k/a Katherine Copperfield ("Delente") acquired the property jointly and severally by a warranty deed dated July 21, 1999. [Dkt. 34, Ex. 15]. In April of 2004, McKenna commenced a marital dissolution action in the Stamford Superior Court and promptly recorded a Notice of *Lis Pendens* dated April 21, 2004 asserting his interest in the Property. [Dkt. 30, Ex. 11]. At his deposition, Plaintiff Steven G. Legum acknowledged that he and Delente were having an affair and that he learned of the dissolution action shortly after Delente was served with process in that action. [Dkt. 23, Legum Dep. 65:3-7].

2

More than two years after McKenna filed for divorce and filed his *lis pendens*, in May of 2006, the Plaintiff gave Delente and her son, Robert Schwertner, unsecured loans in the amount of $42,900 to purchase two automobiles (the "vehicle loans").  [Id. 39:1-24].  Delente failed to repay the vehicle loans and in 2007 Plaintiff commenced a civil action against both Delente and Schwertner to enforce his right to repayment.  [Dkt. 27, Ex. 6].

On December 20, 2007, the Stamford Superior Court entered a judgment of dissolution awarding "all right, title and interest in and to [the Property] to [McKenna] the husband" and ordered Delente "to immediately sign a quitclaim deed to [McKenna] the husband."  [Dkt. 32, Ex. 13, ¶12].  The Superior Court ordered that the Property be sold "free and clear of any liens, mortgages, attachments, and encumbrances."  [Id.]  Delente was entitled to receive one half of the net proceeds from this sale, subtracting various carrying costs, mortgage repayments, and repayments of loans owed by Delente to McKenna.  [Id. ¶ 15]. However, the Superior Court also ordered Delente to immediately pay, from her one half share of the net proceeds of the sale, a list of sixteen different liens, mortgages and claims.  [Id. ¶20(a)-(p)].  The Superior Court specifically listed Plaintiff's pending civil suit against Delente as one such claim.   [Id. ¶20(j)]. Finally, the Superior Court held that McKenna "filed, served and recorded a *lis pendens* against the wife's interest in [the Property]" and that "all liens, mortgages, attachments and/or encumbrances filed in the Greenwich Land Records against the wife after April 22, 2004 are subject to the husband's prior right."  [Id. ¶21].

3

**One month after the entry of the judgment in the dissolution action, Plaintiff obtained a judgment against Delente and Schwertner in his civil suit. [Dkt. 32, Ex. 6]. On March 11, 2008, four months after the judgment in the dissolution action had awarded McKenna "all right, title and interest in and to [the Property]" to McKenna, Plaintiff recorded a judgment lien for $43,395.56 "against Katherine Copperfield, a/k/a Roberta Delente . . . and Rudson Schwertner." [*Id.*] The lien gave Plaintiff a "security interest upon the property owned by the judgment debtor" and listed the address of the Property. [*Id.*]**

**Delente did not immediately execute a quit claim deed as ordered by the court. [Dkt. 35, Ex. 16]. Seven months after the Superior Court order of dissolution conveying to McKenna all interest in the Property and three months after Plaintiff recorded a judgment lien against her, on June 16, 2008, Delente signed a $50,000 note, secured by a mortgage of the Property in favor of the Plaintiff [Dkt. 29, Ex. 10, Dkt. 23, Legum Dep. 54:1-20]. The mortgage note apparently reflected $50,000 in additional unsecured loans, unrelated to the vehicle loan, that Plaintiff claimed to have provided Delente over the prior three years. Two weeks after signing over this mortgage note to Plaintiff, on June 30, 2008, Delente quitclaimed the Property to McKenna. [Dkt. 32, Ex. 16].**

**On July 22, 2011, McKenna conveyed the Property to defendant Lloyds by warranty deed; defendant Lloyds subsequently mortgaged the Property to defendants Webster Bank and MERS. [Dkt. 36, Ex. 17; Dkt. 37, Ex. 18; Dkt. 39, Ex. 20; Dkt. 40, Ex. 21]. Two years after McKenna's conveyance to Lloyds, Plaintiff**

4

initiated this action, seeking a declaratory judgment that Defendants' mortgages are subject and subordinate to his own mortgage and lien

### Legal Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proving that no factual issues exist. *Vivenzio v. City of Syracuse,* 611 F.3d 98, 106 (2d Cir. 2010). "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought." *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986)). "If there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied." *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH,* 446 F.3d 313, 315–16 (2d Cir. 2006) (internal quotation marks and citation omitted).

"A party opposing summary judgment cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible. At the summary judgment stage of the proceeding, Plaintiffs are required to present admissible evidence in support of their allegations; allegations alone, without evidence to

5

back them up, are not sufficient." *Welch–Rubin v. Sandals Corp.*, No.3:03cv481, 2004 WL 2472280, at *1 (D. Conn. Oct. 20, 2004) (internal quotation marks and citations omitted); *Martinez v. State of Connecticut*, No. 3:09cv1341 (VLB), 2011 WL 4396704 at *6 (D. Conn. Sept. 21, 2011).  Where there is no evidence upon which a jury could properly proceed to find a verdict for the party producing it and upon whom the onus of proof is imposed, such as where the evidence offered consists of conclusory assertions without further support in the record, summary judgment may lie.  *Fincher v. Depository Trust and Clearance Co.*, 604 F.3d 712 (2d Cir. 2010).

   III.   Discussion

At the outset, Plaintiffs claims draw perilously close to triggering the domestic relations exception to federal jurisdiction, which strips the federal courts of the authority to hear cases brought by persons seeking "the granting or modification of a divorce or alimony decree."  *Williams v. Lambert*, 46 F.3d 1275, 1283 (2d Cir.1995) (*citing Ankenbrandt v. Richards*, 504 U.S. 689, 700–02 (1992)). To the extent the "declaratory" relief Plaintiff seeks from this Court concerning his purported mortgage would have the effect of modifying the judgment of the Superior Court awarding the Property to McKenna "free and clear" of any and all encumbrances, the Court may lack the authority to hear such a claim.  An action to modify the Superior Court judgment would also seemingly implicate the *Rooker-Feldman* doctrine, requiring the Court to abstain from the action, as "no federal court, other than the Supreme Court, can consider a claim to reverse or

modify a state court judgment." *Phifer v. City of New York*, 289 F.3d 49, 55 (2d Cir. 2002) (*citing Rooker v. Fidelity Trust Company*, 263 U.S. 413, 416 (1923)).

In effect, Plaintiff is ultimately asking the Court to modify the Superior Court judgment, albeit disguised in an action for declaratory relief grounded in a due process claim.  The relief Plaintiff seeks, declaring that he holds a valid mortgage to the Property that is superior to those held by Defendants, would have the effect of burdening McKenna – and Defendants Llloyds and Webster, his successors in interest to the Property – with a liability originally owed by Delente.  This would effectively redistribute the assets and liabilities of Delente and McKenna that were carefully apportioned and assigned by the Superior Court, disturbing a judgment that is within the Superior Court's exclusive province.[1]  However, as discussed below, the Court can decide the questions presented in this case applying Connecticut law, without disturbing the Superior Court judgment.

Plaintiff offers two arguments in support of his motion for summary judgment.  Plaintiff's first argument, construed liberally, is that the judgment of the Superior Court "transferred only equitable title" and "not legal title" such that plaintiff retains valid and enforceable liens against the Property.  Plaintiff's second argument is that he was denied due process because Connecticut law deprived him of the opportunity to intervene in the underlying dissolution action

---

[1] In fact, the Superior assigned one of the very liabilities at issue in this case in listing plaintiff's pending civil suit – which resulted in the judgment lien – as a liability that Delente was ordered to pay from her share of the net proceeds from the sale of the Property.  [Dkt. 32 ¶20(j)].

7

before the Superior Court issued its judgment. In opposition and in support of their own motion for summary judgment, Defendants argue that the judgment of the Superior Court "extinguished" plaintiff's liens pursuant to Connecticut General Statutes Section 46b-80(a), and that Plaintiff was not deprived of due process because Connecticut law would have allowed him to intervene in the dissolution action.

> I.   Transfer of Equitable and Legal Title

It is true, as Plaintiff argues, that a legal title against the Property held by a mortgagor would survive even if the judgment of the Superior Court awarded equitable title to one of the parties to the dissolution action. *See Mortgage Elec. Registration Sys., Inc. v. White*, 896 A.2d 797, 806 (Conn. App. 2006) (noting that "Connecticut follows the title theory of mortgages, which provides that . . . the mortgagee holds legal title and the mortgagor holds equitable title to the property"). In particular, plaintiff cites *Clark v. Clark*, 974 A.2d 33 (Conn. App. 2009), in which the Appellate Court considered a mortgage held by Rutkin & Oldham, LLC ("Rutkin") relating to the marital home owned by Kenneth and Mary Ann Clark. Rutkin served as counsel to Mary Ann Clark early in the divorce proceeding and Ms. Clark had petitioned the Superior Court to allow her to execute a note secured by a mortgage of the property in order to compensate Rutkin for attorney's fees and serve as a retainer for anticipated expenses. The Superior Court granted Ms. Clark's motion, but later denied a motion by Rutkin to intervene as a creditor in the marital action. The Appellate Court noted that "[e]ven if the dissolution judgment transferred equitable title in the marital home

8

to one party, that transfer would not affect Rutkin's legal title pursuant to the mortgage." Rejecting Rutkin's arguments in favor of intervention, the court noted that if Ms. Clark failed in her obligations under the promissory note, Rutkin could "pursue an action to foreclose its mortgage on the marital home, regardless of the identity of the holder of equitable title."

However, the distinction between legal and equitable title is not pertinent in this case, as Plaintiff here held neither legal nor equitable title to the Property prior to the Superior Court judgment awarding the Property to McKenna. Plaintiff merely had a pending civil claim against McKenna for an unsecured personal debt obligation. Plaintiff's only claims to legal title to the Property arise from a judgment lien recorded in March of 2008, three months after the Superior Court judgment, and a mortgage note signed in June of 2008, seven months after the Superior Court judgment. Defendants' arguments that Plaintiff's lien and mortgage were "extinguished" by the Superior Court judgment also miss the mark: Plaintiff's claims to legal title to the Property were never valid to begin with. What was extinguished, as explained below, was Delente's interest in and thus her ability to *convey* any interest in the Property.

It is axiomatic that one cannot mortgage his neighbor's house (or the house of his or her ex-spouse). Rather, one can only convey a title by mortgage if one holds title to begin with, and a mortgagor cannot convey to a mortgagee a greater interest in property than the mortgagor actually possesses. *See Chase Home Fin., LLC v. Morneau,* 156 Conn. App. 101, 104, 113 A.3d 445, 446 (2015) (noting that "only the legal title holder to a parcel of property may mortgage that

9

property"); Conn. Gen. Stat. § 47-36b (2015) ("[a]ny conveyance made pursuant to this chapter . . . conveys to the grantee all the possession, right, title, interest, estate, claim, demand or right of entry or action, of the grantor"); *see generally* 5 Tiffany Real Prop. § 1384 (3d ed.) (noting that only "interests in land which may be the subject of sale, grant, or assignment, may be mortgaged"). Thus, if Delente held no title in the Property after December 27, 2007, no purported conveyance after that date can be valid.

It is also axiomatic that a judgment against defendants A and B cannot result in an enforceable judgment lien against a parcel of property wholly-owned by C. A judgment lien attaches to a judgment debtor's *interest* in property, and not to the property itself. *See* Conn. Gen. Stat. § 52-380a (2015) ("From the time of the recording of the judgment lien certificate, the money judgment shall be a lien on the judgment debtor's *interest* in the real property described . . . .") (emphasis added); *see also Bachyrycz v. Gateway Bank*, 618 A.2d 1371, 1372 (Conn. App. 1993) (*citing Smith v. Gilbert*, 41 A. 284 (Conn. 1898)) (noting the language of § 52-380a renders "liable to attachment certain legal and equitable interests in property" that are "within [the debtor's] control and can be fairly appraised or sold . . . as [in] the interest of one partner in the copartnership property"). Plaintiff's judgment lien, on its face, provides only a "security interest upon the property *owned by the judgment debtor.*" [Dkt. 32, Ex. 6] (emphasis added). Thus, if Delente held no interest in the Property after December 27, 2007, a judgment lien against her interest in the Property recorded after that date is not an effective lien.

10

Connecticut law is clear that Delente held no interest in the property after December 27, 2007. The effect of the dissolution judgment was to immediately – at the time the judgment entered – assign all attachable or conveyable legal title to the Property to McKenna. Connecticut General Statutes Sec. 46b-81(a) provides that:

> (a) At the time of entering a decree annulling or dissolving a marriage or for legal separation pursuant to a complaint under section 46b-45, the Superior Court may assign to either the husband or wife all or any part of the estate of the other. The court may pass title to real property to either party or to a third person or may order the sale of such real property, without any act by either the husband or the wife, when in the judgment of the court it is the proper mode to carry the decree into effect.

Gen.Stat. § 46b–81(a) (2015). As this Court has previously noted in a prior case, in Connecticut it is the "entering" of "a decree annulling or dissolving a marriage" that vests the property interests of the parties. *Smith v. United States*, No. 3:11-CV-01996 VLB, 2014 WL 902589, at *9 (D. Conn. Mar. 7, 2014), *citing* Conn. Gen.Stat. § 46b–81(a) (2015). Therefore, title to the Property was awarded, in full, to McKenna on the date the judgment was entered. *See* [Dkt. 32, Ex. 13, ¶12] (awarding "all right, title and interest in and to [the Property] to the husband"). From the date of the judgment, Delente held no interest in the Property that could be conveyed by mortgage to a third party such as Legum, whether as security for a prior obligation or to secure a new debt. Nor did Delente hold any interest in the Property against which a judgment lien could be effectively secured during this time period. In other words, at no point in the timeline of this case has Plaintiff ever held a valid mortgage or lien against the Property that passed to

11

McKenna; he has been, and remains, merely a judgment creditor of Delente and her son.

At the time the Superior Court entered judgment in the dissolution action, plaintiff held nothing more than an unrealized, pending civil claim against Delente. But even if Delente had conveyed to Plaintiff an interest in the Property prior to the resolution of the marital action, or if Plaintiff had recorded a valid judgment lien prior to that date, any such interest conveyed or attached would only have been held subject to the judgment of dissolution by virtue of the *lis pendens*. Connecticut law is clear that after a notice of l*is pendens* is filed with respect to a certain property, subsequent encumbrances placed on the property will be subject to the resolution of the underlying action, and holders of those encumbrances will be bound by the result as if they had been made parties to the action itself. Connecticut General Statutes Sec. 52-325 provides *inter alia*:

> Such notice shall, from the time of the recording only, be notice to any person thereafter acquiring any interest in such property of the pendency of the action; and each person whose conveyance or encumbrance is subsequently executed or subsequently recorded or whose interest is thereafter obtained, by descent or otherwise, shall be deemed to be a subsequent purchaser or encumbrancer, and shall be bound by all proceedings taken after the recording of such notice, to the same extent as if he were made a party to the action.

Conn. Gen. Stat. § 52-325 (2015). Thus, even if plaintiff had successfully encumbered the Property prior to the judgment of the Superior Court, then, as Defendants argue, that encumbrance would have been "extinguished" by virtue of the *lis pendens* and the operation of Conn. Gen. Stat. § 52-325. *See* 7 A. Rutkin

12

and K. Hogan, *Connecticut Practice Series: Family Law and Practice* § 22.7 (2000). ("A notice of *lis pendens* . . . provides notice to any subsequent transferees or encumbrancers that they take the property, or an interest therein, subject to the claims of the party filing the *lis pendens*. For example, if a *lis pendens* has been filed and the property in question is ultimately awarded to the wife as a lump sum alimony, she would take it free and clear of the claims of a creditor of the husband who filed a lien against the property subsequent to the *lis pendens*."). However, no such encumbrance was ever validly conveyed or executed as to the Property prior to the judgment, and therefore no such encumbrance was ever "extinguished."

## II.     *Due Process*

Plaintiff urges that if the result of the Superior Court judgment is to "extinguish" his mortgage and lien, then he has been deprived of an interest in property without due process of law because he was unable to intervene in the Superior Court action. This argument can be dismissed as frivolous for any number of reasons, including the fact that the Defendants to this action are not proper defendants for a Due Process claim as they are not state actors, and the Superior Court would have immunity from any such suit. But more importantly, "to determine whether a plaintiff was deprived of property without due process of law in violation of the Fourteenth Amendment," the Court must first "identify the property interest involved." *O'Connor v. Pierson*, 426 F.3d 187, 196 (2d Cir.2005). As noted earlier, Plaintiff did not have an interest in the Property at the time the

13

**Superior Court entered its judgment, and therefore could not have been deprived of any such interest.**

**Nonetheless, both parties have devoted a majority of their briefing to the issue of whether Plaintiff could have intervened in the marital action.[2] Even if a due process claim was properly before the Court, against a proper defendant, alleging an actual deprivation of a property interest, the dispute as to Plaintiff's ability to intervene would not be dispositive on the issue of whether Plaintiff was afforded adequate procedural opportunities to seek remuneration for Delente's debts.[3] Connecticut law provides for a number of different procedural remedies that Plaintiff could have undertaken if indeed he had an interest in the Property or any of the marital assets. For example, Plaintiff in 2007 could have applied for a pre-judgment remedy in his civil suit.** See **Conn. Gen. Stat. § 52-278d (2015)**

---

[2] Plaintiff, himself an attorney who has practiced law in state and federal courts, asserts, based on his legal research, that a third party creditor has no right to intervene in a marital dissolution action under Connecticut law. As a result, Plaintiff did not attempt to intervene in the marital action as a third party creditor while the marital action was pending. Defendants have argued that third party creditors have in fact been permitted by some Connecticut courts to intervene in such cases. See, e.g., Pressman v. Pressman, No. FA020394584S, 2004 WL 2943042 (Conn. Super. Ct. Nov. 8, 2004).

[3] Although it is doubtful that Plaintiff here would have been permitted to intervene in the dissolution action given that he did not hold an interest in the marital property at any time prior to the date of the judgment of dissolution, it appears from the judgment in the dissolution action that the Superior Court was already aware of Plaintiff's civil suit against Delente, which was specifically listed as one of sixteen different potential or realized financial obligations owed by Delente to various creditors that would be subject to the resolution of the marital action. [Dkt. 32 ¶20(a)-(p)]. Moreover, the court's dissolution order directed Delente to repay Plaintiff's loan. Beyond a court order to repay him, Plaintiff fails to state how he was deprived by his purported inability to intervene in the dissolution action, particularly given the fact that he was neither a secured creditor nor a judgment creditor at the time the order of dissolution was entered.

14

(providing for pre-judgment attachments upon a showing of probable cause that judgment will be rendered in favor of the plaintiff). Plaintiff could also have commenced a separate civil action under Conn. Gen. Stat. § 52-325(A) challenging the efficacy of the *lis pendens*. *See, e.g.*, *Pear Partners, LLC v. Collins*, No. FSTCV136020476S, 2014 WL 929473, at \*2 (Conn. Super. Ct.). Another, far easier step that Plaintiff could have taken to secure his financial interests would have been to bring a second civil suit against Delente, seeking a judgment for the $50,000 allegedly advanced to her during the three years prior, rather than accepting a mortgage note on a property that the Plaintff *knew* in June of 2008 had already been awarded to the husband.

Even if there were circumstances where a *lis pendens* could cause a great – and even unconstitutional – injustice to a third party creditor, this case does not appear to present such circumstances. Plaintiff extended numerous unsecured loans to Delente and only belatedly attempted to secure several of those loans by obtaining a note and mortgage purporting to encumber the Property, after the Property had already been conveyed to McKenna and despite a valid notice of *lis pendens* recorded on the Property in 2006. *See Webster Bank v. Zak*, 802 A.2d 916, 924 (2002) ("[t]he doctrine underlying lis pendens is that a person who deals with property while it is in litigation does so at his peril...."). Plaintiff admits that he was aware of both the divorce action and the judgment conveying the property to McKenna prior to recording his lien and mortgage in 2008. [Dkt. 21, ¶19]. Plaintiff therefore knew or should have known of the risk that these debts would not effectively be secured. Although Plaintiff has suffered a financial loss, it

cannot be said that he has been deprived of any interest in the Property, or that such a deprivation would have been either unconstitutional or unjust.

IV.     **Conclusion**

For the foregoing reasons, Defendants' Motions for Summary Judgment are GRANTED and Plaintiff's Motion for Summary Judgment is DENIED. The Clerk is directed to enter judgment in favor of Defendants and to close the case.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: September 23, 2015